**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| SHANNON HOFFER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-2801 |
| | § | |
| LANDMARK CHEVROLET LTD, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Shannon Hoffer sues on her own behalf and on behalf of a class of people sent mailings by Landmark Chevrolet Ltd. ("Landmark"), an automobile dealership. Hoffer alleges that the mailings violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.,* because they used information obtained without authorization from the addressees' credit reports, for a purpose not permitted under the Act. The FCRA allows companies such as Landmark to use information obtained from consumers' credit reports for communications that extend "firm offers of credit." The FCRA prohibits the use of such information to advertise rather than extend "firm offers of credit." Hoffer alleges that the mailing she and others received did not extend a "firm offer of credit." She seeks damages under 15 U.S.C. § 1681n(a), which provides that for each violation, the consumer may recover "any actual damages sustained by the consumer as a result of [a violation] or damages of not less than $100 and not more than $1,000," punitive damages, attorney's fees, and costs.

Hoffer has moved to certify a class action, (Docket Entry No. 55); Landmark has responded, (Docket Entry No. 57); and Hoffer has replied, (Docket Entry No. 60). Landmark has moved for summary judgment; (Docket Entry No. 65); Hoffer has responded, (Docket Entry No. 72); and Landmark has replied, (Docket Entry No. 75). Landmark has also moved to supplement its motion for summary judgment. (Docket Entry No. 71). In addition, Landmark has moved to strike the affidavit of Hoffer's expert witness, Oscar Marquis, on the grounds that Hoffer never disclosed Marquis as an expert witness and that Hoffer failed to identify Marquis before the discovery deadline expired. (Docket Entry No. 71). Hoffer has responded. (Docket Entry No. 73).

Based on the motions, responses, and replies; the record; the parties' submissions; and the applicable law, this court grants Landmark's summary judgment motion and denies Hoffer's motion to certify a class action. Landmark's motion to strike is denied as moot. Its motion to supplement is granted. The reasons for these rulings are set out in detail below.

## I.     Background

The FCRA allows consumer credit-reporting agencies to furnish certain information for credit transactions that a consumer did not initiate, as long as the creditor uses that information within the statute's limits. 15 U.S.C. § 1681b. A prospective creditor may purchase information about an individual's credit from a credit-reporting agency in order to prescreen the individual for creditworthiness based on preestablished eligibility criteria and to extend "firm offers of credit" to an individual who meets the criteria. A creditor may not, however, use such information merely for advertising.

The Fifth Circuit has explained the process by which prospective creditors may obtain and use information under the FCRA. "In the pre-screening process, credit reporting agencies compile lists of customers who meet specific criteria provided by the creditor, and then provide the lists to a creditor, who uses the lists to solicit customers with firm offers for credit in the form of pre-approved offers of credit." *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 841 (5th Cir. 2004). Such preapproved "firm offers of credit" may be conditioned on the consumer meeting the creditor's previously established criteria for extending credit. *Id.* If the consumer meets the criteria, however, the credit must be extended. *Id.* at 841–42.

In 2005, Shannon Hoffer received a mailing that stated that it was from Landmark. The mailing stated:

> GREAT NEWS!
>
> Our records indicate you own a vehicle that has a current balance of approximately $19,252.00. This qualifies you for our Incredible Title Transfer Program (ITTP). This is your opportunity to get out of your current lease or loan because you have been conditionally PRE-APPROVED* to purchase a new or used car, truck or SUV LESS THAN GM Employee Price Guidelines. Based on your credit history obtained from a credit reporting agency, you have been selected for this offer. To activate your conditional approval, call our fully automated Customer Approval Hotline toll-free at 1-800-260-3957. You WILL NOT be required to talk to a sales person during this call.
>
> TO ESTABLISH YOUR CONDITIONAL CREDIT AMOUNT:
>
> Your conditional credit amount is not shown on this notice for security reasons.

3

STEP 1) From a touch tone phone, CALL TOLL FREE 1-800-260-3957 and enter your APPROVAL CODE (shown on the enclosed certificate).

STEP 2) Your identity will be verified and you will be told the amount for which you are conditionally PRE-APPROVED*. Write this amount in the space provided on the certificate.

STEP 3) Go directly to the authorized dealer in your area and present your APPROVAL CODE and conditional APPROVAL AMOUNT to validate this offer at the time of purchase.

The authorized dealer in your area is Landmark Chevrolet, who has agreed to mark down their inventory LESS THAN GM Employee Price Guidelines. Your payments may never be less!! Appraisers will be on hand to offer MAXIMUM TRADE VALUE.

Free Back-To-School Backpack Just for Coming In*** Backpacks Provided by Academy.

FREE SIX FLAGS ASTROWORLD TICKET WITH EVERY TEST DRIVE**.   AT SIX FLAGS ASTROWORLD IT'S PLAYTIME!

(Docket Entry No. 1, Ex. A).  The mailing included a check made out "TO THE ORDER OF: Shannon R. Hoffer" with an approval code printed on the top.  Instead of indicating a dollar amount, the check had a blank line, labeled "THE SUM OF."  Under the blank line were the following instructions: "UPON ACTIVATION OF YOUR LOAN, INDICATE YOUR CONDITIONAL PRE-APPROVAL AMOUNT ON THE SPACE PROVIDED HERE." (*Id.*).  On the back of the check was the following language, in smaller type:

*Conditions for credit approval include a new vehicle monthly payment not in excess of 20% of gross monthly income and total monthly payments, including new vehicle payment, not in excess of 50% of your gross monthly income.  You must be at

4

least 18 years of age.  All conditions for credit approval must be met at the time of purchase, and detailed credit history may affect the size of the down payment required.  Bankruptcies must be discharged.  any equity deficiency in a trade-in must be paid or refinanced with the purchased vehicle.  Landmark Chevrolet is not responsible for incorrect information supplied by any credit reporting agency.  This conditional offer was based on a prequalifying report from a credit reporting agency. You have the right to prohibit the use of the information in your file maintained by any credit reporting agency for any credit transaction you do not initiate.  You may exercise this right by notifying the credit reporting agencies that provide pre-qualifying reports, Experian Information Systems, Inc., P.O. Box P.O. Box 919, Allen, TX 75013 and Trans Union LLC, PO Box 97328, Jackson, Miss. 39288, by calling 1-888-567-8688 or 1-888-5OPTOUT.  Neither Landmark Chevrolet nor its agents or employees are responsible for any errors or misprints in this mailing, or for late delivery by US Postal Service. ***Free backpack just for coming in while supplies last, one mailer per household before August 9, 2005.  See dealer for complete details.  Art is for illustration purposes only.  **Free Six Flags AstroWorld ticket with every test drive while supplies last.  Six Flags and all related indicia are trademarks of Six Flags Theme Parks Inc. ®,™ and © 2005. Must present mailer to a sales manager at time of purchase.  Any dispute arising from this mailing must be settled through arbitration in Harris County, TX. All offers plus TT&L with approved credit. © 2005 Market Doctors, Ltd.

(*Id.*).

Hoffer did not respond to the mailing other than by filing this lawsuit.  Hoffer has alleged that she did not authorize Landmark to access or use information from her credit report.  Hoffer alleges that Landmark used information from her credit report to send her a mailing that did not extend a "firm offer of credit" and therefore violated section 1681b of the FCRA.  Hoffer argues that the "purported offer" in the mailing she received "is vague and

totally lacking in terms.  It has no value beyond a solicitation for loan business, the sending of which is not a permissible purpose for accessing a consumer report."  (Docket Entry No. 72 at 4).[1]

Hoffer submitted a copy of the mailing she received.  She alleges that Landmark "sent or caused to be sent" mailings "identical or similar to" the one she received "to approximately four hundred fifty five thousand individuals in and around the Houston area." (Docket Entry No. 55 at 2).  Hoffer also submitted a chart summarizing the number of mailings that Parkway ordered between January 28, 2005 and September 1, 2005.  (Docket Entry No. 55, Ex. B).  She seeks to represent a class of approximately 455,000 individuals whose names were on lists Landmark used in 2005 to order these mailings.  The lists and the names they contained are not available and apparently cannot be recreated.  The number of potential class members is based on information as to the number of mailings.

In this suit, Hoffer asserts that each mailing is an FCRA violation.  She alleges a right to receive $1,000 in statutory damages for each violation, as well as an injunction, punitive damages, and her attorney's fees.

## II.    The Applicable Law

_____

[1]  Hoffer also alleged that the mailing's disclosures were not "clear and conspicuous," in violation of section 1681m(d) of the FCRA.  (Docket Entry No. 15 at 4–5).  However, the 2003 amendments to the FCRA, passed as part of the Fair and Accurate Credit Transactions Act ("FACTA"), Pub. L. 108-159, eliminated private enforcement actions under that section.  (Docket Entry Nos. 16, 28); *see also Perry v. First Nat'l Bank*, 459 F.3d 816, 819–23 (7th Cir. 2006); *Bruce v. Grieger's Motor Sales, Inc.*, 422 F. Supp. 2d 988, 990–93 (N.D. Ind. 2006); *Putkowski v. Irwin Home Equity Corp.*, 423 F. Supp. 2d 1053, 1060–62 (N.D. Cal. 2006); *Stavroff v. Gurley Leep Dodge, Inc.*, 413 F. Supp. 2d 962, 963–67 (N.D. Ind. 2006); *Murray v. Cross Country Bank*, 399 F. Supp. 2d 843, 845 (N.D. Ill. 2005); *Murray v. Household Bank (SB), N.A.*, 386 F. Supp. 2d 993, 996–99 (N.D. Ill. 2005).  This claim is dismissed.

A.     **The Summary Judgment Standard**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c).  The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact.  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  If the burden of proof at trial lies with the nonmoving party, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element or claim.  *Celotex*, 477 U.S. at 330.  The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  "An issue is material if its resolution could affect the outcome of the action." *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  If the moving party fails to meet its initial burden, the summary judgment motion must be denied, regardless of the nonmovant's response.  *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.  The

7

nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 302 (5th Cir. 2004). This burden is not satisfied by "some metaphysical doubt as to the material facts," "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994).

In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. "Rule 56 mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### B. The Fair Credit Reporting Act

#### 1. The Statutory Provisions on a "Firm Offer of Credit"

Congress enacted the FCRA to protect a consumer's right to privacy in the information maintained by consumer credit-reporting agencies. 15 U.S.C. § 1681(a)(4) ("There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."). The FCRA restricts the circumstances under which creditors may obtain a consumer's credit report. *Id.*, § 1681b(a). A credit report may only be obtained with the consumer's written consent or for "permissible purposes." *Id.*; *Cole v. U.S. Capital*, 389 F.3d

719, 725 (7th Cir. 2004).  One permissible purpose is to extend a "firm offer of credit" to the consumer.  15 U.S.C. § 1681b(c)(1)(B)(I); *Cole*, 389 F.3d at 725.  The FCRA defines a "firm offer of credit" as "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a report to the consumer, to meet the specific criteria used to select the consumer for the offer."  15 U.S.C. § 1681a(l).  The offer may be conditioned on:  (1) preselected criteria bearing on credit worthiness; (2) verification that the consumer continues to meet such criteria; and (3) the consumer furnishing preselected and disclosed collateral.  *Id.*, § 1681a(l)(1–3).[2]  The criteria used to determine

---

[2]  Section 1681a(l) provides as follows:

The term "firm offer of credit or insurance" means any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer, except that the offer may be further conditioned on one or more of the following:

(1)   The consumer being determined, based on information in the consumer's application for the credit or insurance, to meet specific criteria bearing on credit worthiness or insurability, as applicable, that are established

(A)   before selection of the consumer for the offer; and

(B)   for the purpose of determining whether to extend credit or insurance pursuant to the offer.

(2)   Verification

(A)   that the consumer continues to meet the specific criteria used to select the consumer for the offer, by using information in a consumer report on the consumer, information in the consumer's application for the credit or insurance, or other information bearing on the credit worthiness or insurability of the consumer; or

(B)   of the information in the consumer's application for the credit or insurance, to determine that the consumer meets the specific criteria bearing on credit worthiness or insurability.

creditworthiness must be "established . . . before selection of the consumer for the offer." *Id.*, § 1681a(l)(1).  A creditor must honor a firm offer of credit if, based on information in the consumer's credit report, the application for credit, or other information bearing on creditworthiness, the consumer meets the criteria initially used to select that consumer for the offer.  *Kennedy*, 369 F.3d at 840.

> 2.      The Case Law on a "Firm Offer of Credit"

Courts that have dealt with whether a mailing is a "firm offer of credit" permitted under the FCRA have generally taken one of two approaches.  In *Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004), the Seventh Circuit required that a mailing or similar communication must provide sufficiently specific information to enable the consumer to determine whether the offer is of "some value" in itself or is merely a solicitation.  *Id.*; *see also Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006).  A number of district courts have followed this approach.  *See, e.g.*, *Hyde v. RDA, Inc.*, 389 F. Supp. 2d 658, 663–64 (D. Md. 2005) (requiring disclosure of the offer's amount of credit extended, interest rate, and repayment period).  A second line of cases does not read the FCRA as requiring such specific or detailed information.  *See, e.g.*, *Putkowski v. Irwin Home Equity Corp.*, 423

---

(3)      The consumer furnishing any collateral that is a requirement for the extension of the credit or insurance that was

    (A)      established before selection of the consumer for the offer of credit or insurance; and

    (B)      disclosed to the consumer in the offer of credit or insurance.

15 U.S.C. § 1681a(l).

F. Supp. 2d 1053, 1060 (N.D. Cal. 2006).  The two lines of cases are discussed below.

a.      *The Seventh Circuit's Approach*

In *Cole v. U.S. Capital, Inc.*, the defendant accessed the plaintiff's credit reports. Using the information obtained, the defendant sent the plaintiff a mailing stating that the plaintiff was "pre-approved to participate in an exclusive offer from U.S. Capital and Jerry Gleason Chevrolet" and was eligible to "receive a Visa or MasterCard with limits up to $2,000 as well as up to $19,500 in AUTOMOTIVE CREDIT!"  389 F.3d at 722.  The mailing included additional eligibility requirements, including that the recipient must not have a monthly car payment that exceeds 50% of her gross income, she must have an annual income of at least $18,000, she must meet certain debt-to-equity requirements, and all bankruptcies must be discharged.  The mailing stated that the plaintiff was not guaranteed a credit card but if the conditions for approval were met, the plaintiff was "guaranteed to receive a credit line of at least three hundred dollars for the purchase of a vehicle."  *Id.* at 723.  The court of appeals reversed the district court's grant of the defendant's motion to dismiss, finding support for the plaintiff's allegation that the defendant's offer was a "sham." *Id.* at 728.  The court reasoned that because the amount of credit offered was low ($300), and because the mailing stated that the credit could only be used toward the purchase of a vehicle at one dealership, the court could not determine from the pleadings and the mailing itself whether the offer had "value."  *Id.*  Under the *Cole* approach, to determine whether a mailing is a "guise for solicitation" or a firm offer of credit, a court examines not only whether the offer would have been honored if the consumer met the preselected eligibility criteria, but

11

also whether and what information was provided as to the amount of credit offered; the stated rate of interest and the method of computation; and the length of any repayment period. *Id.* at 728.

In *Perry v. First National Bank*, 459 F.3d 816 (7th Cir. 2006), the Seventh Circuit considered several of the factors listed in *Cole* and held that a mailing offering a major credit card with a low credit limit ($250), with relatively substantial fees and interest rates, could have value to the normal consumer and pass muster under the FCRA. The court noted that the Visa credit card offered in the mailing could be used "to purchase any products or services for which Visa is accepted." *Id.* at 825. The court distinguished *Cole* on the ground that the credit offered in that case only applied to the purchase of a vehicle at a single automobile dealership. *Id.* (citing *Cole*, 389 F.3d at 728). The court reasoned that the credit-card offer had value to consumers who were, for example, seeking to establish a credit rating for the first time or reestablish good credit. *Id.* The court concluded that although the offer was not "an attractive deal for the great majority of consumers," it was still a "firm offer of credit" permissible under the FCRA because it was "not without value." *Id.*

In *Murray v. GMAC Mortgage Corp.*, the Seventh Circuit provided further guidance on determining whether a mailing or similar communication is a "firm offer of credit." In that case, the plaintiff appealed the denial of her motion to certify a class of FCRA consumers. In examining the district court's findings, the appellate court stated that "to separate the use of credit data to sell products (forbidden) from the use of credit data to make firm offers of credit (allowed) . . . a court must determine whether the offer has value as an

12

extension of credit alone." 434 F.3d at 955. An offer will have value to a consumer "if it is useful to the *normal* consumer." *Id.* To determine whether a lender has made a firm offer in compliance with the FCRA, "a court need only determine whether the four corners of the offer satisfy the statutory definition . . . and whether the terms are honored when a consumer accepts." *Id.* at 956.

In *Hernandez v. Chase Bank USA, N.A.*, 429 F. Supp.2d 983 (N.D. Ill. 2006), the court applied *Murray* and found no firm offer in a mailing stating that the recipient had been "pre-qualified for up to $100,000 or more" in a home-equity loan. The mailing stated:

> This offer is for a secured loan only, and your residence is the collateral for the loan. Our Lending Specialists will help you determine the type of loan that best suits your needs, and the maximum loan you are eligible for, and confirm your pre-qualified status. Afterward, you must complete an application, comply with all of our loan program requirements and pay all applicable loan fees. . . . We may withdraw our offer entirely if updated information we receive from a credit bureau, during the loan structuring process, or in your application shows that you do not meet all of our loan program requirements. We may also withdraw this offer if you move outside our marketing area, or if you do not have sufficient income to repay the new obligation, or your minimum loan amount is less than $15,000 (or $10,000 in MI).

*Id.* at 985. The mailing also stated that "[p]rogram terms and conditions are subject to change without notice," "[n]ot all products are available in all states or for all loan amounts," and "[o]ther restrictions and conditions may apply." *Id.* at 986. Applying the standards set out in the Seventh Circuit cases, the district court held that the terms of the loan disclosed in the mailing were too vague and indeterminate to allow a consumer to conclude that the offer

had value.  *Id.* at 988.  Any loan depended on information to be provided by the consumer, and the loan terms could be changed without notice.  *Id.*

In *Hyde v. RDA, Inc.*, 389 F. Supp. 2d 658, 661 (D. Md. 2005), the court followed the Seventh Circuit cases.  In *Hyde*, the plaintiff received a promotional flyer from a car dealership.  The flyer stated that the plaintiff was preapproved to receive a loan of up to $25,000 toward the purchase of an automobile.  The flyer stated the following conditions:

> Your new vehicle payment cannot exceed 20% of your gross monthly income; vehicle payment totaled with your current monthly payments must not exceed 50% of your gross income. Must be at least 18 years of age.  If you accept this offer, we may not extend credit to you if, after you respond, we determine that you do not continue to meet the criteria used for this pre-approved offer.  Lender assumes no responsibility for incorrect information supplied by various credit reporting agencies.  Any equity deficit in your current vehicle must be paid or refinanced with new vehicle.  Credit severity may affect down payment. Bankruptcies must be discharged.  If in compliance with provisions listed above, you are guaranteed to receive a loan for minimum of $300 up to $22,500 toward the purchase of a 1999 or newer vehicle from Enterprise America Finance.

*Id.*  The flyer further stated that the defendant "used information in a pre-qualifying report from a credit agency in connection with this firm offer of credit."  *Id.*

After receiving the flyer, the plaintiff went to the dealership to accept the defendant's financing offer and purchase a vehicle.  Following the purchase, a dispute arose and the plaintiff filed suit, alleging FCRA violations.  The defendant moved to dismiss the plaintiff's claim that the flyer was not a "firm offer of credit."  The district court applied the Seventh Circuit test, requiring a court to consider the entire offer and all material conditions included

14

in it.  *Id.* at 666.  Expressing doubt as to whether the guaranteed offer of "at least" $300 would provide any value to a consumer buying a vehicle and emphasizing that the flyer lacked information about the interest rate and repayment period, the *Hyde* court denied the motion to dismiss.  *Id.* at 666–67.

In a footnote, the *Hyde* court distinguished the Fifth Circuit's holding in *Kennedy v. Chase Manhattan Bank USA, NA.  Id.* at 666 n.3.  The *Hyde* court noted that *Kennedy* addressed whether an offer conditioned on the consumer meeting  previously established criteria could be a "firm offer" under the FCRA.  In *Hyde*, by contrast, the issue was whether the offer was firm for reasons unrelated to whether it was conditional.  Other courts have found different guidance in the Fifth Circuit's decision in *Kennedy*, as discussed below.

> b.      *The "Strict Constructionist" Approach*

A growing number of cases have declined to follow the Seventh Circuit's approach. These cases use an approach similar to that taken by the Fifth Circuit in *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833.  In *Kennedy*, the court analyzed whether a creditor may impose criteria for credit in addition to those stated in the offer, which the consumer must meet before credit is actually extended.  The plaintiffs in *Kennedy* received a mailing stating that they had been preapproved to receive the defendants' credit card.  When the plaintiffs returned the credit card applications, the defendants declined to open the accounts because, based on information from credit reports, the plaintiffs did not meet preestablished criteria not stated in the mailing.  The Fifth Circuit found that the FCRA permitted a creditor to make a "conditional" firm offer of credit.  As a result, the defendants did not violate the

FCRA in conditioning their offer on the satisfaction of certain criteria. *Id.* at 841. The court held that under the FRCA, "a firm offer of credit really under the Act really means a 'firm offer if you meet certain criteria.'" *Id.* (internal quotations omitted).

In *Kennedy*, the court was not asked to determine what specific or detailed information had to be stated in a mailing to make it a "firm offer." For that reason, the *Hyde* court found *Kennedy* distinguishable. But other courts have applied *Kennedy*'s approach to the FCRA in addressing the issue of what information must be in a mailing to make it a "firm offer of credit." In *Putkowski v. Irwin Home Equity Corp.*, 423 F. Supp. 2d 1053 (N.D. Cal. 2006), the district court declined to read the FCRA to require that a mailing must specify the material credit terms so as to enable the recipient to determine from the "four corners" of the mailing whether the credit offered had "value." The mailing at issue in *Putkowski* offered a revolving line of home-equity credit ranging from $15,000 to $300,000 for a twenty-year term, with a maximum interest rate of 24%. The mailing stated that a borrower might be eligible to receive more favorable credit terms and set out the method by which the interest rates would be calculated. *Id.* at 1057. The court did not examine whether the plaintiff took any action to obtain credit after receiving the mailing. The *Putkowski* court declined to adopt the Seventh Circuit's approach and granted the defendants' motion to dismiss. The court rejected the argument that the offer was insufficiently detailed or specific to enable the recipient to determine that it had "value" to a consumer. "The text of the FCRA does not support plaintiffs' suggestion that a firm offer of credit cannot contain a range of credit or

16

interest rates, or that it must be of sufficient 'value' when judged by a later arbiter, as suggested by the Seventh Circuit in *Cole*." *Id.* at 1060.

In *Poehl v. Countrywide Home Loans, Inc.*, 464 F. Supp. 2d 882 (E.D. Mo. 2006), the district court examined a mailing relating to a home loan.  The mailing stated, "Congratulations!  You've been pre-selected for $92,500 from Homeowners Loan Corp.  Call . . . and use this money, upon final approval, to do whatever you want." *Id.* at 883.  The mailing did not specify the interest rate, repayment period, or other loan terms.  The mailing did state that the offer was conditioned on the "re-verification of your credit information used in making you this offer, the satisfaction of Homeowners Loan Corp.'s other credit, income, and collateral requirements. . . . Actual loan amount may be more or less." *Id.*  The court analyzed the cases and decided not to follow the Seventh Circuit's approach of requiring a mailing to include information not specifically required by the FCRA in order to qualify as a "firm offer of credit."  The court granted the defendants' motion to dismiss the FCRA claim, finding that as a matter of law the mailing was a "firm offer of credit."  The court concluded that a firm offer did not have to state the material terms of a loan to comply with the FCRA:

> It is not the Court's job to decide whether accepting a particular offer might be unwise.  Rather, I need only look to whether the offer has some value, or more than nominal value, in order to distinguish it from a sales pitch.  Congress carefully crafted its definition of "firm offer" and chose not to require that the lender specify particular loan terms.  Instead, Congress provided a number of "outs" for a lender, including additional pre-selection criteria, verification, and collateral requirements.  If Congress had wanted to require that loan amounts, interest rates, or

17

> payback times be specified in a "firm offer," it could have done
> so.  So long as the statutory criteria are met, and so long as there
> is some value to the consumer so that the offer is not a sham or
> mere solicitation, then the absence of interest rates and other
> terms does not prevent the offer from being a "firm offer of
> credit."

*Id.* at 886.

In *Klutho v. Shenandoah Valley National Bank*, No. 4:06-CV-1317, 2007 WL 1527074 (E.D. Mo. May 22, 2007), the district court adopted *Poehl*'s reasoning and held that the defendant's promotional letters for a home-equity line of credit contained "firm offers." The letters stated that the recipient was eligible for a minimum loan amount of $25,000.  The letters did not include information about the loan amount for which the plaintiff was eligible, the interest rates for the loan, the repayment period, or how the interest would be determined. In granting the defendant's motion to dismiss, the court stated, "[n]one of these terms . . . however, are required in order to determine whether the letter qualifies as a 'firm offer of credit' under the FCRA."  *Id.* at *2.  "A reasonable consumer viewing these mailers would believe that they contain some value, the minimum amount of credit to be extended.  Thus, even absent a *specific* amount of money, the consumer can determine from these letters that if all other conditions are met, the consumer will be extended a minimum of $25,000.00." *Id.* at *3.

The district court in *Phinn v. Capital One Auto Finance, Inc.*, No. 07-CV-10940, 2007 WL 1675282 (E.D. Mich. June 11, 2007), also declined to adopt the Seventh Circuit's approach that the FCRA requires specific material terms to be included in a credit offer.  The

18

solicitation in that case was for a loan toward the purchase of an automobile.  The mailing

stated that the consumer had to meet certain criteria before the loan would be extended, but

that if the criteria were met, the loan amount would be between $10,000 and $25,000.  The

mailing contained the following disclosures:

> The consumer cannot be in bankruptcy, must be at least 18 years
> of age and have a monthly income of at least $1,500; the total
> amount financed must be at least $10,000; the consumer may
> need to trade in a current vehicle to close an existing loan; the
> offer is not valid for Daewoo, Oldsmobile, Kia, Suzuki and
> discontinued vehicle lines. . . . This offer is not guaranteed if
> you do not meet our criteria, including providing acceptable
> property as collateral.

*Id.* at *3.

The plaintiff in *Phinn* contended that the offer was not "firm" because it lacked

essential terms, such as the interest rate and repayment terms.  The district court observed

that the FCRA does not require that all the material terms be included in the offer.  The

record contained no evidence that the defendant would not honor the offer stated in the

mailing.  "Here, there is no dispute that the mailer extended Plaintiff an offer of credit

between $10,000 and $25,000, provided that Plaintiff meet additional criteria.  Under the

plain language of the FCRA, this is all that is required to constitute a 'firm offer of credit.'"

*Id.* at *3.  Other courts have made similar statements.  *See, e.g.*, *Crossman v. Chase Bank*

*USA NA*, No. 2:07-116-CWH, 2007 WL 2702699, *4 (D.S.C. Sept. 12, 2007) ("[T]he FCRA

does not require a lender to specify a price or estimated price range in a firm offer of credit.

This Court will not imply such an additional disclosure requirement."); *Gelman v. State Farm*

*Mut. Auto. Ins. Co.*, 2007 WL 2306578 (E.D. Pa. Aug. 9, 2007) ("[T]he statutory text . . .

unmistakably refers to a firm offer as 'any offer of . . . insurance to a consumer that will be

honored.' The definition neither contains a 'sufficient value' requirement, nor requires that

the material terms fo the offer be included in the initial communication to the consumer.")

(internal citations omitted); *Nasca v. J.P. Morgan Chase Bank, N.A.*, No. 06-CV-3472, 2007

WL 678407, at *4 (S.D.N.Y. Mar. 5, 2007) ("This Court, however, is loathe to import a

requirement into a statutory definition that was not placed there by Congress. If Congress

believes the statutory definition of 'firm offer of credit' does not adequately protect a

consumer's interest in the privacy of her credit information, it is for Congress to act; it is not

for the judiciary to add requirements that do not exist in the statute."); *Gross v. Wash. Mut.,*

*Inc.*, No. 06 Civ. 4340 (RLC), 2007 WL 1404435, *4 (S.D.N.Y. May 10, 2007) (same).

In *Pearson v. Novastar Home Mortgage, Inc.*, No. 05-1377, 2006 U.S. Dist. Lexis

36282 (M.D. La. Mar. 28, 2006), the court considered whether a communication stating that

the addressee was preapproved for a $55,000 loan was a "firm offer." The communication

stated:

> Rates, terms and loan amounts are estimates only and may vary
> on each loan and are subject to change. This is not a
> commitment to lend money. Actual amount of credit may vary.
> Information contained in your credit file was used in preparing
> this offer. Amount represents what you may be able to receive
> to consolidate bills, make home improvements, or get cash; your
> actual loan amount may vary.

*Id.* at *2–3. The plaintiff contended that because the communication did not include the

interest rate, the method for computing interest, or the repayment period, it did not extend

a "firm offer of credit." The court rejected this argument, which was based on *Cole*. The court reasoned that the FCRA's definition of "firm offer" as "any offer of credit . . . that will be honored if the consumer is determined . . . to meet the specific criteria used to select the consumer for the offer" and that the absence of Fifth Circuit authority adopting the *Cole* standard cautioned against inserting requirements into the FCRA. *Id.* at *14–15. Nevertheless, the court denied the defendant's motion to dismiss because the record lacked evidence as to the criteria used to determine whether the offer would in fact be extended. *Id.* at *15–16. The court also observed that "although Novastar was apparently making the offer, the document also states that 'Novastar Home Mortgage is not a lender.' Therefore, it is not clear based on the pleadings that the offer could have been honored by Novastar, the ostensible lender, as required by the Act." *Id.* at *16.

### 3. *Analysis of the Competing Lines of Case Law*

Hoffer urges this court to adopt the Seventh Circuit's approach and require a determination from the "four corners" of the mailing that the credit offer is "of value" to the consumer. This determination requires the mailing to state, and the court to consider, the amount and material terms of the credit offered, including interest rates and repayment periods. Hoffer distinguishes *Kennedy* on the basis that it addressed "facts attendant to a creditor's withdrawal of an offer after the consumer attempted to accept it," rather than whether the mailing extended a firm offer of credit. (Docket Entry No. 72).

Hoffer overstates the difference between the issue in *Kennedy* and the issues before this court. Although *Kennedy* did not address the specific issue before this court, the opinion

does provide guidance on the approach the Fifth Circuit took in interpreting the FCRA.  The *Kennedy* court examined the text of the FCRA and how it defined a "firm offer of credit" in concluding that the FCRA permits creditors to make "firm" offers of credit that are "conditioned on the consumer meeting the creditor's previously-established criteria for extending credit." *Kennedy*, 369 F.3d at 841.  In reaching this conclusion, the court declined to expand on the specific requirements of the FCRA.  Similarly, the courts rejecting the Seventh Circuit's approach in *Cole*, *Perry*, and *Murray* have declined to expand on the FCRA's requirements by adding to what a mailing must contain to comply with the Act.  *See, e.g., Gelman v. State Farm Mut. Auto Ins. Co.*, No. 06-5118, 2007 WL 2306578, at *6 (E.D.Pa. Aug. 9, 2007) (finding that the "substantial value" test "simply has no basis in the statutory text"); *Gross v. Wash. Mut., Inc.*, No. 06 Civ. 4340(RLC), 2007 WL 1404435, at *3 (S.D.N.Y. May 10, 2007) (finding that the "substantial value" test "find[s] no support within the text of the FCRA"); *Putkowski*, 423 F.Supp.2d at 1060 ("The text of the FCRA does not support plaintiffs' suggestion that a firm offer . . . must be of sufficient 'value' when judged by a later arbiter, as suggested by the Seventh Circuit in *Cole*.").  This approach is consistent with the guidance *Kennedy* provides for interpreting and applying the FCRA.

Disclosure of the exact terms of an auto loan during the preapproval and solicitation process is not only beyond what the FCRA requires, it may be an unrealistic standard.  The specific terms of a given loan offer may vary greatly depending on what level of risk a particular customer presents, taking into account each individual's credit score, income, and equity holding in the collateral used to secure that loan.  Because "the specific terms of the

loan may vary depending on the exact amount borrowed, the type of car purchased, the consumer's current income, and the duration of the loan," requiring an offer to contain more specific information would upset the balance struck by the FCRA between consumer privacy and a business's right to advertise. *Phinn*, 2007 WL 1675282, at *4; *see also Soroka v. Homeowners Loan Corp.*, No. 8:05-CV-2029, 2006 WL 4031347, at *4 (M.D. Fla. June 12, 2006) ("Every consumer and every lender has a common understanding that home loans are made for a definite period of time, that banks charge interest for lending money, and that interest rates are subject to change.  Lenders charge the highest rate that the market will bear, and consumers obtain the lowest rate justified by their credit information, which involves an assessment of risk as to that individual consumer by the lender.  The value of the property which secures the loan is another critical piece of information as to the amount of the loan that may be extended.  This mutual understanding is inherent in the lending process . . . .").

Neither the FCRA nor the Fifth Circuit's interpretation of the Act requires that an offer include specific information as to interest rates, repayment period, or similar terms, to enable a consumer to determine whether the offer is of "some value" based on the four corners of the mailing.  The Act requires that the defendant make an offer of credit that will be honored if the consumer meets the preestablished criteria.  *See Kennedy*, 369 F.3d at 841 (finding that "the Act permits a creditor to make a 'conditional' firm offer of credit").  Hoffer has failed to offer a persuasive argument as to why this court should add to the requirements stated in the FRCA, to "import a requirement into a statutory definition that was not placed there by Congress." *Nasca*, No. 06-CV-3472, 2007 WL 678407, at *4.  The approach taken

by courts rejecting the Seventh Circuit cases is consistent with the FCRA and with the Fifth Circuit guidance on interpreting that Act.

## III.   Analysis

### A.   Landmark's Summary Judgment Motion

Landmark moves for summary judgment on the grounds that the mailing Hoffer received does constitute a "firm offer of credit" and that there was no willful violation of the FCRA to support an award of statutory damages.  In arguing that the mailing Hoffer received was a "firm offer of credit," Landmark  relies on *Kennedy,* in which the Fifth Circuit interpreted the FCRA to "permit[] a creditor to make a 'conditional' firm offer of credit; that is, an offer that is conditioned on the consumer meeting the creditor's previously-established criteria for extending credit."   *Kennedy*, 369 F.3d at 841.   Landmark's arguments are examined separately below.

#### 1.   Did Landmark's Mailing Make a "Firm Offer of Credit?"

Landmark's mailing to Hoffer stated that she had been "conditionally pre-approved" for a loan toward the purchase of an automobile.  The mailing stated that "[t]his conditional offer was based on a prequalifying report from a credit reporting agency" and that "[c]onditions for credit approval include a new monthly payment not in excess of 20% of gross monthly income and total monthly payments, including new vehicle payment, not in excess of 50% of your gross monthly income.  You must at least 18 years of age.  All conditions for credit approval must be met at the time of purchase . . . ."(Docket Entry No. 1, Ex. A).  Under *Kennedy*, the fact that the credit offer was conditioned on Hoffer  meeting

certain criteria establishing creditworthiness does not make the offer "unfirm."  The FCRA provides that a credit offer may be conditioned on the consumer's meeting certain pre-established criteria bearing on creditworthiness, on the verification of the criteria used to preselect the recipient, and on the consumer satisfying certain debt-to-equity criteria in collateral used to secure the loan.  15 U.S.C. § 1681a(l); *see also Kennedy*, 369 F.3d at 841 ("[A] firm offer of credit under the Act really means a 'firm offer if you meet certain criteria.'") (internal quotations omitted).  The mailing Hoffer received is not "unfirm" because it was conditioned on her meeting certain criteria.

Hoffer argues that the mailing she received lacks specific information necessary to make it a "firm offer."  Hoffer argues that the mailing stated that she was preapproved for a $27,525 auto loan but provided no information about the loan's interest rate, the repayment period, the method by which the interest would be compounded, or whether penalties would be incurred for late payment.  Hoffer urges this court to adopt the Seventh Circuit's approach and require that to be "firm," an offer must provide the loan's material terms, such as interest rates and repayment periods.  As analyzed above, however, the FCRA does not require that such terms be included in a mailing to make it a "firm offer."  Under the approach taken by the Fifth Circuit in *Kennedy* and a number of district courts, the FCRA requirements should not be added to or expanded by the courts.  The FCRA states that the defendant may use preestablished criteria to make an offer of credit based on information obtained from a consumer's credit report, but must honor the offer if the consumer meets the criteria.  The FCRA does not require an offer to spell out interest rates, repayment period, or other terms

that affect the "value" of the offer to consumers.

The offer Hoffer received stated that she was "conditionally pre-approved" for a loan. (Docket Entry No. 72, Ex. A). The mailing stressed that the approval was "conditional" at least five different times, and the back of the "check" included with the mailing stated that "[a]ll conditions for credit approval must be met at the time or purchase." Hoffer's argument that on its face the mailing is not a "firm offer" fails.

The record does not show that Hoffer took action to accept the loan offer. Nor is there evidence that Landmark failed to honor the loan offered to Hoffer or other customers meeting the criteria. The record does not raise a fact issue as to whether Landmark honored the credit offered to Hoffer and others receiving the same mailing she did. *See Dixon v. Shamrock Fin. Corp.*, 482 F. Supp. 2d 172, 177 (D. Mass. 2007) ("[N]o allegation is made in the Complaint that [the plaintiff]—or anyone else—had ever responded to [the defendant's] solicitation and then been denied credit despite meeting creditworthiness requirements or had been diverted to some other type of business dealing."). The summary judgment record shows that Landmark's mailing to Hoffer constituted a "firm offer of credit" under the FCRA. This court grantsLandmark's motion for summary judgment.

### 2. *Was Landmark's Conduct Willful?*

Hoffer alleges that Landmark willfully violated the FCRA. This court has determined that Landmark's mailing to Hoffer was a "firm offer of credit," as that term is defined under the FCRA. Because the mailing to Hoffer was a "firm offer," Landmark is not liable under the FCRA. It is unnecessary to resolve whether there is a fact issue as to willfulness.

26

3.     *Is there a Violation for Disclosures that Were Not Clear and*

*Conspicuous?*

Hoffer also alleges that the mailing's disclosures were not "clear and conspicuous," in violation of section 1681m(d) of the FCRA.  (Docket Entry No. 15 at 4–5).  However, the 2003 amendments to the FCRA, passed as part of the Fair and Accurate Credit Transactions Act ("FACTA"), Pub. L. 108-159, eliminated private enforcement actions under that section. (Docket Entry Nos. 16, 28); *see also Perry v. First Nat'l Bank*, 459 F.3d 816, 819–23 (7th Cir. 2006); *Bruce v. Grieger's Motor Sales, Inc*., 422 F. Supp. 2d 988, 990–93 (N.D. Ind. 2006); *Putkowski v. Irwin Home Equity Corp*., 423 F. Supp. 2d 1053, 1060–62 (N.D. Cal. 2006); *Stavroff v. Gurley Leep Dodge, Inc*., 413 F. Supp. 2d 962, 963–67 (N.D. Ind. 2006); *Murray v. Cross Country Bank*, 399 F. Supp. 2d 843, 845 (N.D. Ill. 2005); *Murray v. Household Bank (SB), N.A.*, 386 F. Supp. 2d 993, 996–99 (N.D. Ill. 2005).  This claim is also dismissed.

**B.     Hoffer's Motion for Class Certification**

Hoffer has moved to certify a class of approximately 455,000 individuals who received "material in the form identical or similar to" her mailing.  (Docket Entry No. 55 at 2).  A suit pleaded as a class action may be resolved by deciding a motion to dismiss or for summary judgment, even before class certification is decided.  *Pisciotta v. Old National Bancorp.,*---F.3d----(2007), 2007 WL 2389770 (7th Cir. August 23, 2007);  *Floyd v. Bowen,* 833 F.2d 529, 534 (5th Cir. 1987); *see also Curtin v. United Airlines, Inc.*, 275 F.3d 88, 93 (D.C. Cir. 2001) ("[W]here the merits of the plaintiffs' claims can be readily resolved on

summary judgment, where the defendant seeks an early disposition of those claims, and where the plaintiffs are not prejudiced thereby, a district court does not abuse its discretion by resolving the merits before considering the question of class certification."); *Garcia v. Veneman*, 211 F.R.D. 15, 19 n.2 (D.D.C. 2002) ("A court may certainly decide dispositive motions prior to determining whether the case may be maintained as a class action.").  The effect of granting a motion for summary judgment in favor of the defendant is to "disqualif[y] the named plaintiffs as proper class representatives" and "to moot the question whether to certify the suit as a class action unless the lawyers for the class manage to find another representative."  *Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941 (7th Cir. 1995); *see also Garcia*, 211 F.R.D. at 19 n.2 ("Once the court disposes of a claim, the court need not consider the disposed-of claim as a basis for class certification.").

Because Landmark's summary judgment motion that the mailing Hoffer received does not violate the FCRA is granted, Hoffer's motion for class certification under Rule 23(b)(3) is moot.  In the interest of complete analysis, however, it is worth noting issues raised by Hoffer's class certification motion.

Hoffer is seeking certification under Rule 23(b)(3), which requires her to show that the proposed class meets the requirements of Rule 23(a)[3] and of Rule 23(b)(3).[4] *Washington*

---

[3]  Rule 23(a) states:

> **(a) Prerequisites to a Class Action**.  One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the

*v. CSC Credit Servs. Inc.*, 199 F.3d 263, 265 (5th Cir. 2000).  One of the four requirements

of Rule 23(a) is typicality, which requires a showing that "the claims or defenses of the

representative parties are typical of the claims or defenses of the class." FED. R. CIV. P.

23(a)(3).  Typicality does not require identity of claims but does require that "the class

representative's claims have the same essential characteristics of those of the putative class.

If the claims arise from a similar course of conduct and share the same legal theory, factual

differences will not defeat typicality."  *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th

Cir. 2001).

---

claims or defenses of the class, and (4) the representative
parties will fairly and adequately protect the interests of
the class.

FED. R. CIV. P. 23(a).

[4] Rule 23(b) states:

> **(b) Class Actions Maintainable.** An action may be
> maintained as a class action if the prerequisites of
> subdivision (a) are satisfied, and in addition: ... (3) the
> court finds that the questions of law or fact common
> to the members of the class predominate over any
> questions affecting only individual members, and that
> a class action is superior to other available methods
> for the fair and efficient adjudication of the
> controversy. The matters pertinent to the findings
> include: (A) the interest of members of the class in
> individually controlling the prosecution or defense of
> separate actions; (B) the extent and nature of any
> litigation concerning the controversy already
> commenced by or against members of the class; (C)
> the desirability or undesirability of concentrating the
> litigation of the claims in the particular forum; (D) the
> difficulties likely to be encountered in the
> management of a class action.

FED. R. CIV. P. 23(b).

Hoffer asserts that her claim is typical of the proposed class because "each class member's claim arises from the same course of conduct: Defendant's sending or causing to be sent the offer to members of the class." (Docket Entry No. 55 at 9–10).  To the extent that Hoffer seeks to represent a class whose members received "similar" – but not "identical" – mailings, typicality issues are present.  Hoffer has not cited cases that would support certifying a class to include members who received mailings that she as the named plaintiff did not receive and that did not involve accessing her credit report.  Most courts applying the class certification requirements of Rule 23(a) in similar contexts have found the typicality requirement satisfied based on the class representative's receipt of the same mailing as the putative class members.  *See, e.g.,  Bernal v. Keybank, N.A.*, No. 06-C-8, 2007 WL 2050405, at *1 (E.D. Wis. July 11, 2007) (granting plaintiff's motion to certify a class consisting of persons who received a specific solicitation); *Shellman v. Countrywide Home Loans, Inc.*, No. 1:05-CV-234-TS, 2007 WL 1100795, at *1 (N.D. Ind. Apr.12, 2007) (stating that the plaintiff's claim "is based on a mailer she and at least 1,000 other consumers in Indiana received"); *Forrest v. Shenandoah Valley Nat. Park*, 2007 WL 1029503, at *1 (E.D. Wis. Mar. 28, 2007) (the plaintiff sought to certify a class composed of "all persons with Wisconsin addresses to whom the Bank has sent solicitations in the form of Exhibit A"); *Krey v. Castle Motor Sales, Inc.*, 241 F.R.D. 608, 615 (N.D. Ill. 2007) (finding typicality based on the fact that "all parties . . . were sent the mailer of Exhibit A").  Although Hoffer submits evidence showing that Landmark ordered a large number of mailers, the record does not show whether Landmark used the same set of criteria to create the recipient list for each

30

set.

If typicality were the only issue, subclassing could provide a solution.  But another problem with certifying the proposed class is Hoffer's inability to obtain or recreate the list of those who were sent any of the mailings.  Hoffer's discovery efforts have shown that the lists of names and addresses used to send the mailings no longer exist and cannot be recreated.  The record shows that after a creditor has generated a list of recipients and created a mailing, it is the standard policy of the companies involved in the process, from the credit reporting agency that provided the consumer information to the printing company that produced the mailings, to destroy the records relating to the mailing recipients.  The stated justification is the protection of the recipients' privacy.  Whatever the reason for the policy of destroying the lists, the upshot is that the lists of individuals who were sent the mailings by the Landmark in 2005 no longer exist.  Because the credit ratings of individuals change on a daily basis, it is apparently not feasible to recreate, in whole or in significant part, the lists Landmark used in sending the mailings at issue.  While Hoffer has obtained information about the number of mailings sent out, she has been able to learn the identities of only a few of the thousands who were sent the mailings.  Hoffer's inability to obtain or recreate the mailing lists raises doubt as to whether she can ever identify the members of the proposed class, which in turn raises concern as to whether she can provide effective notice to those class members or whether she can distribute the damages she seeks on their behalf.

A party seeking to certify a Rule 23(b)(3) damages class must show "that a class action is superior to other available methods for the fair and efficient adjudication of the

controversy." FED. R. CIV. P. 23(b)(3).  In making the superiority inquiry, a court considers "the difficulties likely to be encountered in the management of a class action." *Id.*  An inability to identify the overwhelming majority of the members of a proposed class through any means raises significant superiority and manageability problems.

Hoffer argues that problems with providing notice should not be considered at the certification stage.  Whether effective notice can be provided is properly part of the certification analysis.  *See Murray v. GMAC Mortgage Corp.*, No. 05 C 1229, 2007 WL 2317194, at *7 (N.D. Ill. July 23, 2007) (decertifying a class similar to the one Hoffer seeks to certify based on the parties' inability to identify the class members and provide effective notice).  In addition to being required by the text of Rule 23, the notice requirement for (b)(3) classes has a constitutional dimension.  *See In re Monumental Life Ins. Co.*, 365 F.3d 408, 416 (5th Cir. 2004) ("As 'fundamental requisites of the constitutional guarantees of procedural due process,' notice and opt-out are mandatory for damage classes certified under rule 23(b)(3).") (internal citation omitted).

Hoffer correctly argues that publication notice can be an adequate substitute for individual notice when the information necessary to identify class members and provide individual notice is simply unavailable.  Courts have found that publication notice can satisfy Rule 23.  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (U.S. 1997) ("Rule 23 instructs the court to 'direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'"); *In Re Warfarin Sodium Antitrust* Litigation, 391 F.3d 516, 536 (3rd Cir.

32

2004) (holding that the district court acted within its discretion in finding that "the best notice practicable under the circumstances" was publication notice in publications likely to be read by consumer claimants along with a call-center and a website with information and downloadable forms); *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1097 (5th Cir. 1977) ("[B]ecause constructive notice has long been recognized as a poor substitute for actual notice and its justification is difficult at best, it is to be used only when circumstances make it impracticable to gain the names and addresses of class members and notify them individually of the action's pendency.") (internal citations and quotations omitted); *see also In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 107–08 (S.D.N.Y. 2007) ("[W]hen class members' names and addresses may not be ascertained by reasonable effort, publication notice has been deemed adequate to satisfy due process."); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 296 (W.D. Tex 2007) ("While sending notice by mail is preferred when all or most of the class members can be identified, where class members cannot be identified, as here, notice by publication is sufficient."); 288 *Manual for Complex Litigation*, § 21.311 (4th. ed. 2004) ("Publication in magazines, newspapers, or trade journals may be necessary if class members are not identifiable after reasonable effort.").

However, courts have approved publication and other forms of constructive notice only if they are reasonably likely to be effective. *See, e.g., In re Holocaust Victims Assets Litigation*, 105 F.Supp.2d 139, 144 (E.D.N.Y. 2000) (approving notice plan that involved forty-eight countries, including some individual notice, worldwide publication, public relations efforts, internet use, and community outreach). The circumstances of this case

make it unlikely that any form of publication notice such as Hoffer proposes could be effective.  Publication or similar forms of notice can be effective only if the class members who see the notice are likely to recognize themselves as the class members described.  If publication or a similar form of notice was used in this case, and the notice was seen by individuals who were sent the mailings in 2005, it is highly unlikely that those individuals would remember that they received those particular mailings.  It is therefore highly unlikely that those individuals would recognize themselves as class members.

This case involves the receipt of unsolicited mailings, commonly known as "junk mail."  Many people are likely to recall that they received unsolicited mailings in 2005.  Few people will have any recollection about *what* unsolicited mailings they received in 2005.  Individuals seeing a notice in 2007 stating that if they received an unsolicited mailing, in 2005, from Landmark, with certain terms, they may be a member of a class, are unlikely to recognize themselves as falling within that group.  As Justice Ginsberg stated in describing a similar problem in a different context, publication or similar forms of notice are likely to be ineffective when the putative class members are so "unselfconscious."[5]  *Amchem*

---

[5]*Amchem* addressed a settlement class of those exposed to asbestos, including those who had no present symptoms of illness.  The Court rejected the class, in part because those who did not know whether they would develop such symptoms or who did not even know that they were exposed and might become ill at some point in the future could not receive effective notice of the class.  "Family members of asbestos-exposed individuals may themselves fall prey to disease or may ultimately have ripe claims for loss of consortium. Yet large numbers of people in this category-future spouses and children of asbestos victims-could not be alerted to their class membership. And current spouses and children of the occupationally exposed may know nothing of that exposure.  Because we have concluded that the class in this case cannot satisfy the requirements of common issue predominance and adequacy of representation, we need not rule, definitively, on the notice given here. In accord with the Third Circuit, however, we recognize the gravity of the question whether class action notice sufficient under the Constitution and Rule 23 could ever be given to legions so unselfconscious and amorphous." *Amchem Products, Inc.*, 521 U.S. at 628

*Products, Inc.*, 521 U.S. at 628.

The inability to identify the vast majority of the members of the proposed class also makes it problematic that any of the statutory damages Hoffer seeks to recover for the class could be distributed to individual class members.  Hoffer asserts a right to recover up to $1,000 in statutory damages for each mailing sent to each class member, in addition to seeking the punitive damages and the attorneys' fees provided under the statute.  15 U.S.C. §§ 1681b, 1681n.  But if very few of those class members can be identified or given effective notice of their right to claim damages, very few of those class members will receive the individual statutory damages the FCRA provides.  By certifying the class as Hoffer proposes, these class members would be bound by the result and precluded from filing their own FCRA suits but would not receive any of the damages provided by the statute.  A consumer class action is superior to individual suits because it allows people with claims worth too little to justify individual suits – so called negative-value claims – to obtain the redress the law provides.  But if the consumer class action is likely to provide those with individual claims no redress, and if the consumer statute provides incentives such as punitive damages and attorney's fees to make individual suits worth filing, the consumer class action is likely not superior to individual suits.

Hoffer invokes *cy pres* as a way to overcome the problem created by the fact that she seeks millions of dollars in statutory damages based on the number of people sent mailings,

───────────────

(internal citation omitted).

with no ability to identify those people to distribute the statutory damages to them.  The *cy pres* doctrine originated in the trust context to respond to situations in which funds in a charitable trust could no longer be devoted to the purpose for which the trust was created. In the class action context, courts have applied *cy pres* primarily (although not exclusively) as a practical solution to the problem of settlement funds remaining after those class members who could be identified with reasonable effort received their distribution.  *See, e.g., In re Airline Ticket Comm'n Antitrust Litigation*, 307 F.3d 679 (8th Cir. 2002); *Powell v. Georgia-Pacific Corp.*, 119 F.3d 703 (8th Cir. 1997); *In re Folding Carton Antitrust Litigation*, 744 F.2d 1252 (7th Cir. 1984); *see also Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990) ("Federal courts have frequently approved [the *cy pres*] remedy in the settlement of class actions where the proof of individual claims would be burdensome or distribution of damages costly."); *In re Agent Orange Product Liability Litigation MDL No. 381*, 818 F.2d 179, 185 (2d Cir. 1987) ("[S]ome 'fluidity' is permissible in the distribution of settlement proceeds.").   In such cases, courts may allow the undistributed settlement funds amounts to be paid to a group or for a purpose that will indirectly benefit the class, while recognizing that the individual class members will receive no direct benefit.  2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 10:17 (4th ed. 2002).

Hoffer proposes using *cy pres* as a substitute for distributing damages to individual class members, even if the case is tried.  Courts have not endorsed such a broad use of *cy pres*.  *See, e.g., Molski*, 318 F.3d at 954 ("We have left open the question of whether a *cy*

*pres* award can ever be used as a substitute for actual damages.").  To approve the use of *cy pres* as a substitute for distributing statutory damages to individual class members, as Hoffer proposes, is at odds with the damages scheme Congress provided in the FCRA.  The statute provides aggrieved individuals a right to receive damages for unlawful disclosures of their credit reports.  15 U.S.C. §§ 1681b, 1681n.  Congress provided that a defendant who accesses a consumer's credit report for a purpose not permitted by the FCRA must pay that consumer either actual damages or a range of statutory damages.  Replacing the payment of statutory damages to individual class members with a *cy pres* payment intended to provide indirect benefits to the class – perhaps by a charitable contribution to a public interest organization focused on consumer rights – changes this compensation statute to something quite different.

One court has devised a framework for examining when *cy pres* might be appropriate in the class action context.  Rejecting any approach to class damages "which would automatically utilize a fluid recovery mechanism as a procedural alternative to class action disposition," the Second Circuit in *Simer v. Rios* laid out a three-step analysis to determine whether *cy pres* is warranted.  661 F.2d 655, 676 (2d Cir. 1981).  Although few cases cite this analysis, it is a useful way to illustrate the difficulties in using *cy pres* as Hoffer proposes.

Under *Simer*, "[t]he general inquiry is whether the use of such a mechanism is consistent with the policy or policies reflected by the statute violated.  This matter can be more particularized into an assessment of to what extent the statute embodies policies of

deterrence, disgorgement, and compensation." *Id.* at 676.  The first question is "whether a fluid recovery is needed to deter the defendant from illegal conduct." *Id.*  In this case, the relevant damages provision of the FCRA provides that a party is liable for "any actual damages sustained by the consumer as a result of [a violation] or damages of not less than $100 and not more than $1,000," punitive damages, attorney's fees, and costs.  15 U.S.C. § 1681n(a).  Under this provision, a court has discretion to fix a damage award within the statutory range and may consider variables such as the actual amount of damages suffered, willfulness, and other factors.  *See Aeschbacher v. Cal. Pizza Kitchen, Inc.*, No. CV 07-215VBFJWX, 2007 WL 1500853, at *3 (C.D. Cal. 2007 April 3, 2007); *Andrade v. Chase Home Fin., L.L.C.*, No. 04 C 8229, 2005 WL 3436400, at *6 (N.D. Ill. December 12, 2005).  A court may decline to award statutory damages and instead award actual damages in a particular case.  *Aeschbacher*, 2007 WL 1500853, at *3.  Because the statute provides for punitive as well as statutory or actual damages and attorneys' fees, there are meaningful incentives to individual suits and the deterrent effect they provide.  *Cy pres*, as Hoffer proposes to use it, might lead to more frequent use of class actions, which could increase deterrence.  But that is a different question from whether *cy pres* is necessary to achieve the deterrent effect of the statute.

The second factor of the *Simer* test considers whether *cy pres* recovery would disgorge illegally obtained profits.  "Those cases where a corporate defendant engages in unlawful conduct and illegally profits [are] most appropriate for a fluid recovery." *Id.*  As with the first factor, the second factor weighs against *cy pres* recovery in this case.  The

38

statute does not provide for disgorgement and does not base damages on the amount of profits obtained. Hoffer did not argue that Landmark obtained specific profits from the allegedly improper use of consumers' credit information or seek the disgorgement of such amounts.

Under the third factor, the court examines whether the statute has a compensatory purpose. The FCRA recognizes that a consumer suffers harm when their privacy is invaded and provides actual or statutory damages to redress that harm. But under *cy pres*, the individual class member would not receive the compensation provided by the statute. In light of these three factors, *cy pres* would not appear necessary to further the substantive policies of the FCRA.

There is an obvious potential for abuse in refusing to certify a damages class under Rule 23(b)(3) when the defendant has destroyed the only effective way to identify the class members. Allowing defendants who violate the FCRA to avoid class-action exposure by simply destroying the mailing lists they used to accomplish the violation is obviously problematic. But the record in this case does not present this risk of abuse. The record does not suggest that Landmark intentionally destroyed the information necessary to recreate the list of mailing recipients. Rather, the record shows that Landmark contracted with third parties who generated and destroyed the mailing lists. There is no evidence to suggest that Landmark exercised authority over that process. There is no evidence to suggest that Landmark knew about the destruction of the information or the policy that led to the destruction. Landmark hired a company called Market Doctors to generate the mailings.

Market Doctors was responsible for creating the mailing and generating the list of recipients from its database of consumer credit information, based on the criteria that Landmark provided.  Although courts should be mindful of this potential abuse, in the present case there is no indication that it is present.

Hoffer's motion for class certification as to Landmark's mailings is denied.

## VI.    Conclusion

Landmark's summary judgment motion is granted.   Hoffer's motion for class certification is denied as moot.  Landmark's motion to supplement is granted; its motion strike the affidavit of Oscar Marquis is denied as moot.  Final judgment will be entered by separate order.

SIGNED on October 23, 2007, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge